## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **RUSSELL JOHNSON,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **No. 3:24-CV-00360-KFP** |
| | : | |
| | : | |
| **TUSKEGEE UNIVERSITY;** | : | |
| **GEMECHU WIRTU; SHAIK** | : | |
| **JEELANI; RUBY PERRY; OLGA** | : | |
| **BOLDEN-TILLER, individually and** | : | |
| **their official capacities,** | : | |
| | : | |
| **Defendants.** | : | |

_____

### FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Russell Johnson, Plaintiff in the above-captioned case (hereinafter "Plaintiff" or "Dr. Johnson"), by and through his counsel of record, Mia Hollingsworth, and complains against Defendants as follows:

### I. Jurisdiction

1. Plaintiff asserts claims against Defendant Tuskegee University for monetary damages under Title IX of the Education Amendments of 1972 (Title IX), 86 Stat. 373, as amended, 20 U.S.C. §§ 1681, *et seq*. Plaintiff also asserts claims for damages against Tuskegee and the individual defendants under 42 U.S.C. §§ 1983

and 1988, for deprivation of his civil rights under color of state law. This Court has jurisdiction of Plaintiff's claims under 28 U.S.C. §§ 1331 and 1343 because Plaintiff seeks to redress his civil right guaranteed by Act of Congress not to be discriminated against on the basis of sex by any recipient of federal education funding and/or not to be subjected to sexual harassment and retaliation so severe, pervasive, and objectively offensive that it denied him the equal access to education that Title IX is designed to protect. Plaintiff also seeks to redress the violation of his rights to due process of law guaranteed to him under the Fourteenth Amendment to the U.S. Constitution.  In addition to the claims set forth, Plaintiff seeks redress for Defendants' actions which amount to intentional infliction of emotional distress and breach of contract under Alabama law.  The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims of intentional infliction of emotional distress and breach of contract arising under Alabama state law that are related to the other claims in this action such that they form part of the same case.

## II. **Parties and Venue**

2. Plaintiff Russell Johnson is an adult, black male who is a citizen of the United States and the State of Alabama. All acts complained of in this Complaint

occurred within the Middle District of Alabama. Venue is proper in this division of this district under 28 U.S.C. § 1391.

3. Defendant Tuskegee University, located in Macon County, Tuskegee, Alabama, is a recipient of federal education funding. At all times relevant to the averments of this Complaint, Defendant Tuskegee University had authority to take remedial action to address and correct the sexual harassment and retaliation suffered by Plaintiff while he was a student in the Tuskegee University College of Veterinary Medicine as described in this Complaint.

4. Defendant Gemechu Wirtu is an assistant professor with Tuskegee University and former member and co-chair of Plaintiff's dissertation committee. At all times relevant to the averments of this Complaint, Defendant Gemechu Wirtu acted on behalf of Defendant Tuskegee University in his capacity as a member of Plaintiff's dissertation advisory committee. Further, Defendant Gemechu Wirtu acted at all times material to the averments of this Complaint under color of state law. Further, Defendant Gemechu Wirtu engaged, and used his influence to encourage others to engage, in retaliation against Plaintiff for engaging in protected activity while he was a student in the Tuskegee University College of Veterinary Medicine in violation of Title IX.

5. Defendant Ruby Perry is the Dean of the Tuskegee University College of Veterinary Medicine and former co-chair of Plaintiff's dissertation committee. At

all times relevant to the averments of this Complaint, Defendant Ruby Perry acted on behalf of Defendant Tuskegee University in her capacity as a member of Plaintiff's dissertation advisory committee. Further, Defendant Ruby Perry acted at all times material to the averments of this Complaint under color of state law. Further, Defendant Ruby Perry engaged, and used her influence to encourage others to engage, in retaliation against Plaintiff for engaging in protected activity while he was a student in the Tuskegee University College of Veterinary Medicine in violation of Title IX.

6. Defendant Shaik Jeelani is the Dean of Graduate Studies at Tuskegee University. At all times relevant to the averments of this Complaint, Defendant Shaik Jeelani acted on behalf of Defendant Tuskegee University. Further, Defendant Shaik Jeelani acted at all times material to the averments of this Complaint under color of state law. Further, Defendant Shaik Jeelani had authority to take remedial action to address and correct the sexual harassment and retaliation suffered by Plaintiff for engaging in protected activity while he was a student in the Tuskegee University College of Veterinary Medicine as described in this Complaint.

7. Defendant Olga Bolden-Tiller is the Dean of the College of Agriculture, Environment, and Nutrition Sciences. At all times relevant to the averments of this Complaint, Defendant Olga Bolden-Tiller acted on behalf of

Defendant Tuskegee University in her capacity as a member of Plaintiff's dissertation advisory committee. Further, Defendant Olga Bolden-Tiller acted at all times material to the averments of this Complaint under color of state law. Further, Defendant Olga Bolden-Tiller had authority to take remedial action to address and correct the sexual harassment and retaliation suffered by Plaintiff for engaging in protected activity while he was a student in the Tuskegee University College of Veterinary Medicine as described in this Complaint. Dr. Bolden-Tiller was the original co-chair/co-advisor, along with Dr. Wirtu, of Plaintiff's dissertation committee. In approximately March or April, 2021, Dr. Perry told Plaintiff that she was taking the place of Dr. Bolden-Tiller on Plaintiff's dissertation advisory committee.

## III. <u>Facts</u>

8. In April 2019, Plaintiff Dr. Russell Johnson applied for both the Large Animal Internship and Ph.D. Program at the Tuskegee University College of Veterinary Medicine.

9. In May 2019, Dr. Johnson was admitted to both programs, but declined the Large Animal Internship and started his Ph.D. Program in June 2019.

10. On or about October 22, 2019, Lauren Mayo, a female, who was Dr. Bolden-Tiller's Ph.D. student, verbally harassed and physically assaulted Dr. Johnson

while traveling to Auburn University as part of the educational program of Tuskegee University. Dr. Wirtu was Ms. Mayo's co-advisor.

11. Dr. Johnson reported this harassment and assault to his advisor, Dr. Wirtu, and his co advisor, Dr. Bolden-Tiller. Neither Dr. Wirtu nor Dr. Bolden-Tiller took any action to address the harassment and assault.

12. On or about the morning of December 11, 2020, Ms. Mayo physically assaulted Dr. Johnson again while he was working in the Roanoke Packing Plant as part of his educational requirements.

13. Dr. Johnson reported this harassment and assault to his advisor, Dr. Wirtu, and his co advisor, Dr. Bolden-Tiller. Neither Dr. Wirtu nor Dr. Bolden-Tiller took any action to address the harassment and assault.

14. On or about the afternoon of December 11, 2020, Ms. Mayo physically impeded Dr. Johnson's access to a lab he is required to access as part of his educational program with Tuskegee University. When Dr. Johnson let her know that he needed access to the lab, Ms. Mayo told Dr. Johnson that "you need to grow the fuck up and you are acting like a fucking child," or words to that effect.

15. Dr. Johnson reported this harassment and assault to his advisor, Dr. Wirtu, and his co advisor, Dr. Bolden-Tiller. Neither Dr. Wirtu nor Dr. Bolden-Tiller took any action to address the harassment and assault.

16. On or about February 11, 2021, Dr. Johnson filed a formal complaint with Tuskegee University regarding the conduct that Ms. Mayo directed toward him and his advisors' refusal to address said conduct.

17. On or about February 18, 2021, while in the lab, Dr. Johnson requested that Dr. Wirtu let him know in the future whether Ms. Mayo will be in the lab at the same time as Dr. Johnson.  Dr. Wirtu refused this request.

18. On or about February 22, 2021, the Vice President of Student Affairs, Dr. Kimberly Scott, emailed Dr. Johnson and explained that she was referring his complaint to Dr. Aglan, the Interim Provost, and Dr. Perry, the Dean of the College of Veterinary Medicine.

19. Throughout February and March 2021, Dr. Johnson attempted to set up his training to use an ultrasound machine as was required for him to continue in his educational program with Tuskegee University. Based on the continued actions of Defendants Perry and Wirtu, Dr. Johnson was unable to schedule this training during this time which deprived him of access to his educational program with Tuskegee University.

20. On or about March 8, 2021, Dr. Johnson met with Dr. Perry. During the meeting, Dr.  Perry repeatedly told Dr. Johnson he should stop saying a "girl" hit him and cursed at him.  During the meeting, Dr. Perry stated that Dr. Johnson would not complete the Ph.D. program.

21. On or about May 11, 2021, Dr. Johnson sent a cover letter with attachments to Charles Johnson, the Secretary to the Board of Trustees of Tuskegee University, explaining to him how he was being discriminated against. Charles Johnson responded and advised Dr. Johnson to appeal his concerns to the Graduate School. When Dr. Johnson told Charles Johnson that he had already done this, Charles Johnson did not respond.

22. On or about May 18, 2021, Plaintiff emailed members of the Tuskegee University Board of Trustees his concerns as outlined above. One board member acknowledged receipt of Dr. Johnson's email, but no board member provided any guidance or advice. Most importantly, no board member took any steps to remediate the continued discrimination suffered by Dr. Johnson at the hands of Tuskegee University employees.

23. On or about November 18, 2021, Plaintiff was notified that a committee formed by the Graduate School in response to Dr. Johnson's complaint found that Dr. Johnson has what he needs to complete his Ph.D. program. This purported finding did not address the allegations made by Dr. Johnson concerning the discrimination he suffered at the hands of Tuskegee University employees or Ms. Mayo. Dr. Johnson asked Dr. Jeelani about his discrimination complaints. Dr. Jeelani told Dr. Johnson to disregard his previously grieved complaints and

to focus on completing his Ph.D. Dr. Jeelani referred Dr. Johnson to the General Counsel, Charles Johnson, for his discrimination complaints.

24. When Dr. Johnson spoke to the General Counsel, Dr. Johnson explained that he wanted his discrimination complaint addressed pursuant to Tuskegee University's Policies and Procedures.

25. On or about January 20, 2022, Dr. Johnson received an email from Mia Maxwell, Tuskegee University's Title IX coordinator, explaining that his complaints were forwarded to her office.

26. On or about March 31, 2022, Dr. Johnson received a decision from the Title IX Hearing Board finding that his Title IX rights were not violated by Tuskegee University.

27. On or about April 6, 2022, and after the Title IX Hearing Board rendered a decision, Dr. Johnson received the evidence used by the Title IX Hearing Board. Part of that evidence included an unsigned letter from Dr. Bolden-Tiller and Dr. Wirtu to Ms. Mayo, Dr. Johnson's student colleague who physically and verbally assaulted Dr. Johnson, accusing Dr. Johnson of wrongdoing. The statements in this letter were and are patently false. The letter was never provided to Dr. Johnson until after the Title IX decision had been made.

28. On or about April 25, 2022, after an email exchange between Dr. Johnson and Dr. Perry, Dr. Johnson filed a formal Title IX complaint against Dr. Perry.

29. On or about April 28, 2022, Ms. Maxwell informed Dr. Johnson via email that his complaint against Dr. Perry had been transferred to the Graduate School. On or about May 4, 2022, Dr. Jeelani from the Graduate School emailed Dr. Johnson to inform him that his complaint was transferred to his office.

30. Throughout May 2022, Dr. Johnson attempted to register for his classes with Tuskegee University. Because of the actions of Defendants, Dr. Johnson was unable to register for classes.

31. On or about May 31, 2022, Dr. Jeelani met with Dr. Johnson and told him that a committee would meet to address how to resolve Dr. Johnson's complaint against Dr. Perry.

32. On or about July 6, 2022, Dr. Johnson filed a formal complaint with the Title IX office at Tuskegee University based on retaliation against him by Dr. Perry and Dr. Wirtu.  Specifically, Dr. Wirtu removed himself from advising Dr. Johnson on his Ph.D. program.  Additionally, Dr. Perry removed herself from advising Dr. Johnson on his Ph.D. program as well.  Without a chair and an advisory committee, Dr. Johnson is unable to complete his Ph.D. program with Tuskegee University. Because of the retaliatory actions of Dr. Perry and Dr. Wirtu, Dr. Johnson has been excluded from participation in, denied the benefits of and subjected to discrimination under the Ph.D. program of the Tuskegee University College of Veterinary Medicine.

33. On or about August 10, 2022, a decision was issued by the Title IX Office outlining the findings from the investigation of Dr. Johnson's Title IX retaliation complaint. In the decision, it was found that Dr. Perry and Dr. Wirtu retaliated against Dr. Johnson by resigning from his dissertation advisory committee, effectively preventing Dr. Johnson from completing his Ph.D. program, because he filed his Title IX complaints.  The retaliatory resignations were determined to be in violation of Tuskegee University's Title IX Policy based on Title IX law.

## IV. <u>Count One</u>—Deliberate Indifference to Sexual Harassment (20 U.S.C. § 1681 *et seq.*)

34. Plaintiff incorporates herein as if fully set out in Paragraphs 1 through 33 of the Complaint.

35. Plaintiff is a male. Plaintiff's female classmate, Lauren Mayo, sexually harassed him through physical and verbal attacks.

36. Plaintiff reported the harassment, assaults and subsequent actions of his female classmate to his advisors, Dr. Wirtu, Dr. Bolden-Tiller, and Dr. Perry. Dr. Perry told Plaintiff he should stop saying "a girl" hit him.

37. Plaintiff reported this harassment to several school offices. Under the circumstances, the acts and omissions of Defendant Tuskegee University in

response to those reports constitute deliberate indifference to student-on-student sexual harassment, in violation of 20 U.S.C. § 1681 *et seq*.

38. The deliberate indifference of Defendant Tuskegee University to Plaintiff's complaints about the sexual harassment caused Plaintiff to forgo classroom instruction and research through the lab thereby limiting his ability to participate in, and benefit from, the Defendant's education program or activities.

39. Plaintiff suffered monetarily in the form of lost future income as a proximate result of the deliberate indifference and breach of contract of Defendant Tuskegee University to his complaints of Title IX violations because he would have earned more money in his practice of veterinary medicine with a Ph.D. The deliberate indifference of Tuskegee University to Plaintiff's complaints of Title IX violations prevented Plaintiff from completing his Ph.D. program.

## V. <u>Count Two—Retaliation</u> (20 U.S.C. § 1681 *et seq.*)

40. Plaintiff incorporates herein as if fully set out Paragraphs 1 through 33 of the Complaint.

41. Title IX and its implementing regulations prohibit retaliation against any person who complains about what he reasonably believes to be a Title IX violation, who advocates on behalf of Title IX rights and enforcement, and any person who cooperates in any investigation of a Title IX violation.

42. Plaintiff engaged in Title IX protected activity by repeatedly reporting violations of Title IX to officials with authority to correct or remediate these violations within Tuskegee.

43. Plaintiff's actions were protected from retaliatory action against him based on his reports of sex discrimination because retaliation on that basis is discrimination on the basis of sex under Title IX. *See* 20 U.S.C. § 1681(a) ("no person … shall, on the basis of sex, be …  subjected to discrimination under any education program … receiving Federal financial assistance.")

44. Dr. Perry and Dr. Wirtu retaliated against Plaintiff by withdrawing from serving as his advisors on his Ph.D. dissertation advisory committee thereby denying him the ability to continue his course of study with Tuskegee University. Other committee named Defendants who were either committee members or responsible for committee members retaliated against Plaintiff by withdrawing or failing to prevent withdrawal from the advisory committee thereby denying him the ability to continue his course of study with Tuskegee University.  Defendant Tuskegee University failed to take any action to correct or remediate the adverse consequences Plaintiff suffered as a result of the withdrawal by the advisors and members from Plaintiff's Ph.D. committee.

45. The retaliation of Defendant Tuskegee University against Plaintiff was caused by, was in direct response to, and was in retaliation for, the exercise by Plaintiff of his rights under Title IX.

46. The adverse retaliatory actions of Defendant Tuskegee University against Plaintiff violated Plaintiff's rights under Title IX and its implementing regulations.

47. The retaliation of Defendant Tuskegee University against Plaintiff constitutes a *per se* violation of Title IX and left Plaintiff unable to participate in, and benefit from, the Defendant's educational programs and activities.

48. Plaintiff suffered monetarily in the form of lost future income as a proximate result of the retaliation of Defendant Tuskegee University against him because he would have earned more money in his practice of veterinary medicine with a Ph.D.  The actions of the advisors and committee members prevented Plaintiff from completing his Ph.D. program.

## VI. <u>Count Three</u>—Failure to Comply with Title IX (20 U.S.C. § 1681 *et seq.*)

49. Plaintiff incorporates herein as if fully set out Paragraphs 1 through 33 of the Complaint.

50. Defendant Tuskegee University failed to follow Title IX regulatory procedures regarding investigations conducted by its employees.

51. Defendant Tuskegee University failed to provide to Plaintiff evidence used to make a finding on Plaintiff's original complaint during the investigative stage in order to allow Plaintiff an opportunity to view and comment on that evidence.

52. Defendant Tuskegee University's other failures relating to the investigation and complaint processing procedures constitute *per se* violations of Title IX and left Plaintiff vulnerable to harassment and assault that caused Plaintiff to forgo classroom instruction and lab instruction thereby limiting his ability to participate in, and benefit from, the Defendant's educational programs and activities.

53. Plaintiff suffered monetarily in the form of lost future income as a proximate result of the failure of Tuskegee University to comply with Title IX because he would have earned more money in his practice of veterinary medicine with a Ph.D. The actions of Tuskegee University prevented Plaintiff from completing his Ph.D. program.

## VII. Count Four—Denial of Due Process (42 U.S.C. § 1983, and Fourteenth Amendment)

54. Plaintiff incorporates herein as if fully set out Paragraphs 1 through 33 of the Complaint.

55. The failure of individual Defendants to comply with the administrative requirements of Title IX deprived Plaintiff of his liberty interest in bodily integrity

and his property interest in an education, without due process of law, in violation of the Fourteenth Amendment to the U.S. Constitution.

56. Defendants subjected Plaintiff to violations of his liberty interest in bodily integrity, and his property interest in his education, by failing to investigate Plaintiff's complaints adequately, by failing to discipline appropriately the perpetrator who sexually harassed Plaintiff and the Dean found in violation of Title IX, and by failing to train and supervise Tuskegee University staff adequately with respect to the handling of Title IX complaints.

57. The denial by Defendants of Plaintiff's constitutional right to due process caused Plaintiff to forgo classroom instruction and activities thereby limiting his ability to participate in, and benefit from, the Defendant's educational programs and activities.

58. The denial by Defendants of Plaintiff's constitutional right to due process also caused Plaintiff pain and suffering, including but not limited to, humiliation, depression, and suicidal ideation.

59. The denial by Defendants of Plaintiff's constitutional right to due process also caused Plaintiff to suffer monetarily in the form of lost future income as a proximate result of the acts or omissions of Defendants Tuskegee, Wirtu, Jeelani, Perry, and Bolden-Tiller because he would have earned more money in his practice of veterinary medicine with a Ph.D. The actions of Defendants Tuskegee,

Wirtu, Jeelani, Perry, and Bolden-Tiller prevented Plaintiff from completing his Ph.D. program.

## VIII. <u>Count Five</u>—Intentional Infliction of Emotional Distress

60. Plaintiff incorporates herein as if fully set out Paragraphs 1 through 33 of the Complaint.

61. Among other failings including but not limited to acts of retaliation, all Defendants failed to document, investigate, and report and prevent further harassment and sexual harassment; failed to respond in a timely manner to Plaintiff's pleas for help and assistance; failed to follow the policy and procedures of the student handbook and failed to initiate disciplinary proceedings against the perpetrator who sexually harassed Plaintiff.

62. Defendants knew, or should have known, their acts and omissions would result in serious emotional distress to Plaintiff.

63. Defendants' acts and omissions were so extreme and outrageous as to exceed the bounds of decency and are completely intolerable in a civilized society.

64. Defendants' acts and omissions caused Plaintiff pain and suffering in the form of humiliation, depression, and suicidal ideations.

65. The denial by all Defendants of Plaintiff's constitutional right to due process also caused Plaintiff to suffer monetarily in the form of lost future income as a

proximate result of the acts or omissions of all Defendants because he would have earned more money in his practice of veterinary medicine with a Ph.D. The actions of all Defendants prevented Plaintiff from completing his Ph.D. program.

## IX. <u>Count Six—Breach of Contract</u>

66.  Plaintiff incorporates herein as if fully set out Paragraphs 1 through 33 of the Complaint.

67.  The policies and provisions in the Tuskegee University student handbook establish a binding agreement between these Defendants and each Tuskegee University student.

68.  Incorporated into this agreement is Defendants' obligation to follow the procedures they have established for handling complaints.

69.  Defendants failed to follow these binding procedures.

70. Defendants' actions in failing to follow the procedures and provide the rights guaranteed by their own policies and procedures have imposed substantial economic harm upon Dr. Johnson, who has lost the academic benefits of the work he was unable to complete, has suffered reputational harm, and has been forced to bear the financial burden of not obtaining his Ph.D.

71.  Defendant Tuskegee University's actions constitute breach of contract, and Plaintiff is entitled to compensatory damages to be determined by an impartial jury.

## X. <u>Relief Sought</u>

Wherefore, premises considered, Plaintiff requests that this Court:

72. Take jurisdiction over Plaintiff's claims against Defendant Tuskegee University for monetary damages under Title IX of the Education Amendments of 1972 (Title IX), 86 Stat.  373, as amended, 20 U.S.C. §§ 1681, *et seq.;*

73. Take jurisdiction over Plaintiff's individual claims for monetary damages against Defendants Wirtu, Jeelani, Perry, and Bolden-Tiller under 42 U.S.C. § 1983.

74. Take jurisdiction over Plaintiff's claims against Defendants for monetary damages under for breach of contract and intentionally causing Plaintiff emotional distress.

75.  Schedule this matter for trial before a stuck jury and upon return of a verdict in Plaintiff's favor, enter a judgment awarding damages together with costs and attorney's fees and any other relief as may be appropriate under the law.

Respectfully submitted this 19th day of August, 2024.

Mia Hollingsworth
mia.hollingsworth@gmail.com
4658 Presidential Parkway
Suite 1100
Macon, Georgia 31206
478-396-3945

**ATTORNEY FOR PLAINTIFF
ASSOCIATED WITH LOCAL
COUNSEL TIFFANY JOHNSON-
COLE, Esq.**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 19th day of August, 2024, a true and correct copy of the above and foregoing was sent via electronic mail as follows:

Lynlee Wells Palmer
JACKSON LEWIS P.C.
Synovus Center
800 Shades Creek Parkway, Suite 870
Birmingham, Alabama 35209

Samuel E. Black
JACKSON LEWIS P.C.
Synovus Center
800 Shades Creek Parkway, Suite 870
Birmingham, Alabama 35209

Mia Hollingsworth
mia.hollingsworth@gmail.com
4658 Presidential Parkway
Suite 1100
Macon, Georgia 31206
478-396-3945

**ATTORNEY FOR PLAINTIFF ASSOCIATED WITH LOCAL COUNSEL TIFFANY JOHNSON-COLE, Esq.**